IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY PATRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No.   06 C 3780 |
| CITY OF CHICAGO, a municipal ) | |
| corporation, et.al, ) | Judge Leinenweber |
| ) | Magistrate Judge Valdez |
| Defendants. ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS, IN PART, PLAINTIFF'S AMENDED COMPLAINT AND FOR A MORE DEFINITE STATEMENT**

Now Comes Plaintiff, Jerry Patrick, by his attorneys, Avery Camerlingo Kill, LLC, by Annemarie E. Kill, and submits this Memorandum of Law in opposition to the City of Chicago, Miguel d'Escoto, William Marback, James Taggart and George Catezone's Motion to Dismiss, in Part, the Amended Complaint and For a More Definite Statement:

**INTRODUCTION**

Jerry Patrick (hereinafter "Patrick"), a cement worker, was terminated from his employment at the city of Chicago after twenty (20) years of service. See Amended Complaint ¶14.[1] He could only be terminated "for cause." ¶15. He was terminated solely because of his off-duty arrest and his subsequent failure to respond to questions posed by the City's Inspector General (hereinafter "IG"), which were related to the arrest and other private, off-duty conduct. ¶18, ¶20-29. The Personnel Board of the City of Chicago upheld his termination.[2] ¶35-38. Patrick then sought review of the decision pursuant to a petition for a writ of certiorari he filed in the Circuit Court of Cook County, Illinois. The Defendants removed the action to this Court, and Patrick subsequently filed an Amended Complaint. Defendants' Motion to Dismiss, in Part,

---
[1] Cites to Amended Complaint are herein referred to as "¶_."
[2] The Personnel Board is now known as the Human Resources Board.

the Amended Complaint and for a More Definite Statement followed.

## STANDARD OF REVIEW

Defendants' partial motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. A claim may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ferrill v. City of Milwaukee, 295 F. Supp. 2d 920, 922 (E.D. Wis. 2003). All well-pled factual allegations must be taken as true, and all reasonable inferences must be drawn in favor of the plaintiff. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995)

Defendants' motion for a more definite statement is brought pursuant to Federal Rule of Civil Procedure 12(e). Under the Rule, a court may order a more definite statement when a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. Pro. 12(e).

## ARGUMENT

**I. Plaintiff's Writ of Mandamus in Count II of the Amended Complaint Should Not Be Dismissed as It Is Timely and is a Proper Method to Challenge Plaintiff's Discharge.**

Defendants argue that Patrick's claim for mandamus must be dismissed because first, it was untimely and second, it was not a proper method to seek review of the Defendants' conduct.

**A.     Plaintiff's mandamus claim is timely.**

Defendants argue that Patrick's mandamus claim was untimely because it was not brought within six (6) months of the cause of action accruing. First, Patrick's cause of action did not accrue until he exhausted his internal remedies and received a final decision from the Personnel Board on April 11, 2006. Thus, his Amended Complaint, which was filed on October 5, 2006, was filed within six months and was timely. Second, even assuming *arguendo,* that the cause of action accrued on the date of his termination, March 31, 2005, his Amended Complaint was still timely since any delay in filing was reasonable.

2

First, Patrick's cause of action for mandamus did not accrue until April 11, 2006. Exhaustion of administrative remedies is required prior to the issuance of mandamus relief. Ducker-Bey v. Mayer, 81 C 1039, 1982 U.S. Dist. LEXIS 11640 *4 (N.D. Ill. March 8, 1982). Pursuant to the Chicago Municipal Code, if an employee desires a hearing on a disciplinary action, he or she is required to file a written request for a hearing with the Personnel Board. Chicago Municipal Code § 2-74-060 (2006).

Though Patrick was initially terminated from the City on March 31, 2005, he pursued his internal remedies and properly requested a hearing by the city of Chicago Personnel Board. ¶32, 35. The Personnel Board did not hold a hearing on the matter until January 4, 11, and 12, 2006. ¶36. It rendered a final decision on April 11, 2006. ¶37. On May 15, 2006, Patrick filed his Complaint in the Circuit Court of Cook County. When Defendants removed the action to federal court, Patrick requested leave to file an Amended Complaint which he did on October 5, 2006.

Defendants argue that Patrick's suit for mandamus should have been brought by September 30, 2005. However, at that time his appeal to the Personnel Board was still pending. Patrick could not have brought such a claim at that time because he had not yet exhausted his internal remedies. His internal remedies were not exhausted until April 11, 2006 when he had a right to appeal the decision of the Personnel Board to the Circuit Court of Cook County. Clearly, if the cause of action accrued as of the date of termination, as Defendants argue, Patrick would be caught in a "procedural catch 22." If he filed suit six months from termination, his claim would be subject to dismissal for failure to exhaust since his claim remained pending at the Personnel Board. However, if he filed after a final decision from the Personnel Board, he would be subject to dismissal on limitations grounds. Because of this, courts have rejected arguments similar to Defendants' argument. See generally Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001).

Second, assuming *arguendo*, that the cause of action accrued on March 31, 2005, Patrick's delay was excusable. Defendants acknowledge that if a plaintiff had a reasonable explanation for the delay then compliance with the six month limitation is excused. See Richter v. Collinsville Township, 97 Ill. App. 3d 801, 804-805 (Ill. App. Ct. 1981); People ex rel. Casey v. Health & Hospitals Governing Com., 69 Ill. 2d 108, 114 (Ill. 1977). A delay is reasonable where the parties "were in continuous controversy over the question of whether plaintiff's termination was justified." Long v. Tazewell/Pekin Consol. Communications Center, 236 Ill. App. 3d 967, 971-972 (Ill. App. Ct. 1992). In Long, the plaintiff exceeded the six month limit. Id. at 969. However, in this time period, the plaintiff was pursuing unemployment compensation and the employer was contesting the claim. Id. at 971-972. The court found that plaintiff's pursuit of unemployment compensation benefits was "closely related to the instant action for wrongful termination" and concluded that the delay was reasonable. Id. at 972. Moreover, in Casey, a delay of 23 months was reasonable where the employees were awaiting the disposition of a lawsuit involving *other* employees who were discharged under the same policy. Casey, 69 Ill. 2d 108 at 114.

Assuming, *arguendo*, that Patrick's cause of action arose on March 31, 2005, he clearly had a reasonable explanation for any delay in filing his mandamus claim. As delineated above, Patrick was exhausting his internal remedies through the City. Patrick was, in fact, awaiting the outcome of his own case pending at the Personnel Board, and the state court action contesting the termination. As in Long, the parties were always in "continuous controversy" over Patrick's termination. Further, if the plaintiffs in Casey were excused from the six month limitation because they were awaiting the outcome of *other* employees' lawsuits, than it surely follows that Patrick would be excused for awaiting the outcome of his own internal appeal.

Rexroat v. Abatte, 163 Ill.App.3d 796 (Ill. App. Ct. 1987), cited by Defendants, is

4

inapposite. In Rexroat, the plaintiff waited four years to compel a township highway commissioner to record his right of access to a roadway. Id. at 799. The only explanation for the delay was that the plaintiff was without funds to hire an attorney. Id. Since he eventually filed his suit *pro se*, the court found his delay unreasonable. Id.

Accordingly, Patrick's mandamus claim is timely.

**B.  Plaintiff's mandamus count is proper because he alleged that the City had a duty to act.**

Defendants next argue that the City had no duty to act, and thus Patrick is not entitled to a writ of mandamus. However, Patrick has sufficiently alleged that the City had a duty to act.

In disciplinary proceedings, "public agencies must follow their own rules; disciplined employees have the right to rely upon them." Farmer v. McClure, 172 Ill. App. 3d 246, 252 (Ill. App. Ct. 1988). In Farmer, the plaintiff sought mandamus because the employer violated certain personnel rules, as well as the union contract. Id. at 251. The court held that the employee "possessed both a clear right and a vested interest in applicability of these rules . . . [the employer] had a clear duty and the power to act to insure that the rules applied. . ." Id. at 252. The court also noted that mandamus could be had where public employees were fired in violation of a statute or ordinance. Id. Similarly, in Holland v. Quinn, 67 Ill. App. 3d 571, 574 (Ill. App. Ct. 1978), relied-upon by Defendants, the court reversed the trial court's dismissal of a mandamus action which alleged the employer's failure to follow its own policy as to employment transfers. The court held "we must accept as true the plaintiffs' allegation that there is such a policy. Whether such a policy actually exists is a question of fact which cannot be disposed of on a motion to dismiss." Id. at 574.

Patrick alleged that the Chicago Municipal Code authorized investigations only as to "official duties," yet he was interrogated regarding off-duty conduct. ¶10, ¶26, ¶38. He also alleged that the City's personnel rules provided he could only be discharged for just cause. ¶15.

5

He alleged that the Collective Bargaining Agreement provided a right of protection against self-incrimination which was violated by the City. ¶27, ¶29. Defendants herein ask the court to dismiss the mandamus count and find, as a matter of law, that there were no rules or policies requiring the City to act. Patrick has sufficiently alleged same. ¶10, ¶15, ¶27, ¶39, ¶43. ¶44. The allegations of Patrick's Amended Complaint include violations of rules, policies, and ordinances, and clearly fall within the holdings of Farmer and Holland.

Though Defendants cite Machinis v. Board of Election Comm'rs, 164 Ill. App. 3d 763 (Ill. App. Ct. 1987), it is inapposite. The employee was denied mandamus because he failed to present any evidence indicating the existence of any policy, and even testified that he was *not aware* of any policy. Id. at 768. Significantly, Machinis was decided after trial, not on a motion to dismiss. Id. at 766. Defendants also rely on Anderson v. Grayslake Sch. Dist. No. 46, 94 C 5133, 1997 U.S. Dist. LEXIS 15980 (N.D. Ill. Oct. 3, 1997), and King v. City of Chicago, 324 Ill. App. 3d 856 (Ill. App. Ct. 2001), for the proposition that the discharge of City employees is discretionary; however neither case involved an action for mandamus. Finally, Defendants cite Piller v. Beecher, 64 Ill. App. 3d 887 (Ill. App. Ct. 1978). However, in Piller, the plaintiffs sued the wrong entity, and failed to allege any specific rules, statutes or ordinances which compelled the firing of a police chief. Rather the complaint only contained "some 20 instances of alleged misconduct, and prayed only that the village be directed to discharge the chief." Id. at 888.

Accordingly, Patrick states a claim for a writ of mandamus.

## II. Plaintiff's Fifth Amendment Claim in Count III of the Amended Complaint States a Claim and Should Not Be Dismissed.

Defendants next argue that Patrick had no Fifth Amendment right against self-incrimination during the IG's investigation. Defendants argue that since Patrick alleged he was given immunity that there could be no violation of his Fifth Amendment rights. First, Patrick did not allege he was given immunity. Second, assuming, *arguendo*, that he did receive proper

6

immunity, his Fifth Amendment rights were still violated.

First, Patrick did not allege he was given immunity. Rather, Patrick attached a copy of the "Findings and Decision" of the Personnel Board because it was the decision he sought to review in his initial Complaint. The "Findings and Decision" stated that Patrick was given "administrative rights" which included a statement that any "disclosure made during the interview could not be used in a subsequent criminal proceeding." Am. Comp. Ex. A (para. 3).

Defendants acknowledge that Atwell v. Lisle Park Dist., 286 F.3d 987, 990 (7th Cir. 2002) holds that a public employer may force its employees to answer questions pertinent to allegations of misconduct "but if it does that it must give them immunity from criminal prosecution on the basis of their answers." Atwell citing Lefkowitz v. Cunningham, 431 U.S. 801, 806, 53 L. Ed. 2d 1, 97 S. Ct. 2132 (1977), Gardner v. Broderick, 392 U.S. 273, 276 (1968), Chan v. Wodnicki, 123 F.3d 1005, 1009 (7th Cir. 1997) ("The Supreme Court has made clear that the threat of job loss for a public employee is a sufficient threat to require that the employee be granted immunity from prosecution before he is required to answer questions about his public responsibilities."). In fact, only the *state* has authority to grant immunity. People v. Sanchez, 131 Ill. 2d 417, 424 (Ill. 1989). Plaintiff alleged that the IG had *no* authority to give him immunity from criminal prosecution. ¶30. In fact, criminal charges were pending against him at the time of the interrogation and the IG was specifically allowed to divulge information obtained to the states' attorneys' office. ¶25, 31.

Second, and more importantly, even if proper immunity was given, the IG's interrogation violated Patrick's Fifth Amendment rights because it was not specifically, directly and narrowly related to his official duties. Though Defendants focus on the arguable immunity given, they wholly ignore that the nature of the inquiries during the interrogation violated Patrick's Fifth Amendment rights. The nature of the inquiries is crucial. A government employer may

7

discharge an employee for refusal to answer a question where the employer "*both* asks *specific questions relating to the employee's official duties* and advises the employee of the consequences of his choice, i.e., that failure to answer will result in dismissal but that answers he gives and fruits thereof cannot be used against him in criminal proceedings." Confederation of Police v. Conlisk, 489 F.2d 891, 894 (7th Cir. 1973), cert. denied, 416 U.S. 956 (1974) as cited in Berry v. Illinois Dep't of Human Servs., 00 C 5538, 2003 U.S. Dist. LEXIS 19286 at *65 (N. D. Ill. Oct. 29, 2003); Gardner v. Broderick, 392 U.S. 273, 278 (U.S. 1968) (discussing that questions must be "specifically, directly, and narrowly relating to the performance of [plaintiff's] official duties"); Lefkowitz v. Cunningham, 431 U.S. 801, 806 (U.S. 1977) ("Public employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their *official duties* if they have not been required to surrender their constitutional immunity.") (emphasis added); Morgan v. Tandy, IP 99-535-C, 2000 U.S. Dist. LEXIS 7446, *22 (S.D. Ind. Feb. 28, 2000) (noting that if the public employee "had been fired because . . . he had refused to answer certain questions he found out of bounds. . .he might have a viable claim under the *Garrity* line of cases"); D'Acquisto v. Washington, 640 F. Supp. 594, 622 (N.D. Ill. 1986) ("However, the state has a choice between either demanding an accounting from him on *job-related matters*, in which case it cannot use the statements in a criminal prosecution, or prosecuting him, in which case it cannot demand an accounting.") (emphasis added). If no relationship with an employee's official duties was required during an employer's questioning, the language used in all of the cases would be merely gratuitous.[3]

    Accordingly, it was squarely held in this Circuit that "Gardner and Lefkowitz clearly established that no adverse actions could be taken against police officers for asserting the Fifth

---

[3] Thus, it follows that in Atwell, relied-upon by Defendants, that the plaintiff was being investigated for work-related misconduct-- specifically the misuse of park district funds. Atwell, 286 F.3d at 989.

Amendment in inquiries *unrelated to their official duties*." Chan v. Chicago, 777 F. Supp. 1437, 1443 (N. D. Ill. 1991) (internal citations omitted). Though Defendants do not appear to be obeying it, the City's own Municipal Code ostensibly supports the law-- the IG is only empowered to investigate employees' performance of their "official duties." ¶10; Chicago Municipal Code § 2-56-050(b). The issue then becomes this: were the questions posed to Patrick specifically, directly and narrowly related to his official duties? If they were, he may have been required to answer given a proper grant of immunity. If they were not, he could not be forced to answer, regardless of the immunity provided to him.

Off-duty drug and alcohol use have often been held to be unrelated to an employee's official duties. See Young v. Hampton, 568 F.2d 1253, 1262 (7th Cir. 1977) (reversing the termination of a federal employee convicted for off-duty drug possession); E. Associated Coal Corp. v. Mine Workers, 531 U.S. 57 (U.S. 2000); Massingale v. Police Bd. of Chicago, 140 Ill. App. 3d 378 (Ill. App. Ct. 1986) (reversing termination of police officer convicted of driving under the influence of alcohol while off-duty).

A public employer's inquiries into an employee's alleged off-duty drug and alcohol use have been held to be unrelated to an employee's official duties and thus unconstitutional. In National Treasury Employees Union v. United States Dep't of IRS, 843 F. Supp. 214, 218 (D. Tex. 1992), reversed on other grounds, 25 F.3d 237 (5th Cir. 1994), an employer asked for information about off-duty current and/or past drug use ("Question 19"). The court explained:

> The key to avoiding conflict with the Fifth Amendment is that the public employer's questions must 'specifically, directly and narrowly' relate to the employee's performance of his official duties. It is unquestionable that there is the possibility Question 19 will elicit incriminating statements. . . Questions relating to off-duty current and/or past drug use and problems relating to drugs and/or alcohol are not 'specifically, directly and narrowly related' to the employee's performance of their official duties. Consequently, Question 19 violates the employees' Fifth Amendment rights.

See also National Treasury Employees Union v. Yeutter, 918 F.2d 968, 974 (D.C. Cir. 1990)

9

(holding that drug testing of government employees who do not hold safety or security-sensitive jobs, absent "reasonable suspicion of on-duty drug use or drug-impaired work performance" is unconstitutional).

Patrick alleged that the questions posed were not specifically, directly and narrowly related to the performance of his official duties. ¶48. Accordingly, Patrick refused to answer questions posed to him by the IG regarding his off-duty arrest and alleged drug use over his entire lifetime. ¶24. Patrick did manual work to tear-up and finish cement on city streets. ¶14. He always performed his duties and complied with all requirement of employment. ¶17. He was never observed under the influence of any alcohol or drugs at work, nor was there any negative effect on his work performance. ¶38, Ex. A para.4 (supervisors' testimony as to same). Clearly, the interrogation regarding alleged drug-use occurred *only* because the police officers brought the arrest to the attention of the IG. ¶19. In fact, after the interrogation, the City allowed him to work another eight months, which clearly undercuts any argument that their concerns related to Patrick's performance of his official duties. ¶33. Accordingly, the nature of the IG's inquiries violated Patrick's rights, and he states a claim under the Fifth Amendment.

Defendants also argue that Patrick failed to allege exhaustion of remedies. However, he specifically pled exhaustion. ¶41. He requested that the Personnel Board review the decision. ¶27, ¶35. He then properly sought review of the decision which is the basis of Count I of his Amended Complaint. However, even if Patrick did not exhaust his remedies, he need not do so prior to bringing a Section 1983 claim. Allen v. City of Chicago, 828 F. Supp. 543, 561 (N.D. Ill. 1993). The cases cited by Defendants are inapposite as they involve claims under the Labor Management Relations Act.[4]

---

[4] In Defendants' Footnote Number 5, it is wholly unclear why Defendants contend "the relevant Illinois immunity statute" is 820 ILCS §405/1001. This is the Illinois Unemployment Insurance Act. The statute, on its face, applies to statements given in conjunction with claims for unemployment.

### III. Plaintiff's Right of Privacy Claim in Count IV of the Amended Complaint States a Claim and Should Not Be Dismissed.

Defendants next argue that Patrick's privacy claim should be dismissed because, first, he had no reasonable expectation of privacy, and second, his privacy was not actually invaded.

Defendants also mention that Patrick lacks standing to sue because of his pending discrimination claim with the Illinois Department of Human Rights for the use of his arrest record. See 775 ILCS 5/2-103. However, an employee need not exhaust any state or federal administrative remedies prior to bringing a Section 1983 claim. Harker v. University Prof'ls, 1999 U.S. App. LEXIS 922 *9-10 (7th Cir. 1999), cert. denied, 527 U.S. 1022 (1999); Behavioral Inst. of Ind. v. Hobart Common Council, 406 F.3d 926, 930 n.2 (7th Cir. 2005). Moreover, Patrick's privacy claim is wholly different than his discrimination claim.

Defendants argue that Patrick had no expectation of privacy regarding public records or conduct on a public street. Even assuming, *arguendo*, that this is true, Defendants ignore that Marback's and Taggart's interrogation went well-beyond the scope of the arrest. Marback and Taggart asked Patrick about his state of mind on the day of his arrest, if he was currently addicted to cocaine, if he had *ever* been addicted to cocaine, if he had *ever* been addicted to any drug, and how long he had been using illegal substances. ¶24.

The Supreme Court has long-held that the right to privacy protects an individual's non-disclosure of personal information. Whalen v. Roe, 429 U.S. 589, 599-600 (U.S. 1977). The "disclosure strand" of the privacy interest includes the "right to be free from the government . . . inquiring into matters in which it does not have a legitimate and proper concern." Shirshekan v. Hurst, 669 F. Supp. 238, 241 (C.D. Ill. 1987) citing Ramie v. Hedwig Village, 765 F.2d 490, 492 (5th Cir. 1985). A court must balance the individual's right to privacy with the government's interest in the information. Id. Such a balancing test cannot be "performed solely on the basis of

11

the allegations" of a complaint. Id. at 242.

This Circuit squarely held that the right to privacy may "be implicated when a state conditions continued employment on the disclosure of private information." Pesce v. J. Sterling Morton High Sch., 830 F.2d 789, 797 (7th Cir. 1987); see also Denius v. Dunlap, 209 F.3d 944 (7th Cir. 2000). In Denius, the requirement that a teacher disclose medical and financial information was held to violate the teacher's right to privacy. Id. at 956-958.[5]

It has been specifically held that a government employer violates the right to privacy (as well as the Fifth Amendment) when it conditions employment on an individual answering questions about past drug use. In American Federation of Government Employees, etc. v. United States R. Retirement Bd., 742 F. Supp. 450 (N.D. Ill. 1990), summary judgment was granted to a group of employees in a case strikingly similar to a case at bar. Employees were asked "Do you now use or supply, or within the last 5 years have you used or supplied, marijuana, cocaine, narcotics, hallucinogenic, or other dangerous or illegal drugs?" (hereinafter "Question 24"). Id. at 453. The court also noted that the information obtained could then have been released to other agencies. Id. at 455. The court conducted the necessary balancing test by balancing the employer's need for the information with the individual's "interest in keeping private evidence of past substance abuse." Id. at 454. In holding that this question violated the rights of employees, the court admonished government employers that they do not have "unbridled license to require anything it wants of its employees." Id. at 453. The court concluded that the employees' right to privacy was violated and stated:

> The government cannot require its employees to divulge their most intimate secrets; at least not without demonstrating a compelling need for those secrets. No such compelling need has been demonstrated here, and this court accordingly will not authorize the Board to collect the information requested in question 24. Id. at 455.

---

[5] Subsequently, upon remand, the court granted judgment as a matter of law for the employee for invasion of privacy, even after a jury returned a verdict in favor of the employer. Denius v. Dunlap, 330 F.3d 919 (7th Cir. 2003)

The court specifically noted that "the forced self-disclosure of such highly personal information as substance abuse which may have occurred up to five years ago is excessive." Id. at 454.

In American Federation, the question involved drug-use in the past five years, rather than an entire lifetime, as was involved in the instant case. ¶24(f) and (g). Similar to American Federation, Patrick's answers could have been disclosed to other government agencies. ¶31. Though the Defendants may attempt to advance a "compelling interest" for inquiring into its employees' private lives, they have not yet done so. Even if they do, it is difficult to imagine how obtaining information regarding alleged drug use from, perhaps, twenty years ago, will serve a compelling governmental interest.

Defendants second argument, advanced without authority, is that the privacy count should be dismissed because Patrick did not actually answer the IG's questions. However, it is the employer's conditioning of employment on the disclosure of private information, not the disclosure itself, which violates the right to privacy. See generally Denius, 209 F.3d 944, 949. Certainly, it is just that refusal (and resulting termination) which usually causes the subsequent lawsuit for the violation of the right to privacy. Id.

Accordingly, Patrick has properly alleged a violation of his right to privacy.

## IV. Defendants d'Escoto, Marback, Taggart and Catezone Should Not Be Dismissed in Their Official or Individual Capacities.

Defendants argue d'Escoto, Marback, Taggart and Catezone should be dismissed in their official capacities. However, they are properly named in their official capacities. In Gyrion v. City of Chicago, 04 C 5670, 2005 U.S. Dist. LEXIS 9508, *8-9 (N.D. Ill. May 4, 2005), the City made the same argument. The court held that "[t]his argument is incorrect when viewed in the light of Owen v. City of Independence, 445 U.S. 622 (1980)." It was held that defendants could properly be named in their official capacities. In any event, such a dismissal should not be

decided at this stage of the litigation. See McNeal v. Cook County Sheriff's Dep't, 282 F. Supp. 2d 865, 868-869 (N.D. Ill. 2003); Lanigan v. Village of E. Hazel Crest, 110 F.3d 467, 480 (7th Cir. 1997).

Defendants then argue that d'Escoto, Marback, Taggart and Catezone should be dismissed in their individual capacities. Of course, "an individual cannot be held liable in a §1983 action unless he caused or participated in [the] alleged constitutional deprivation." Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996). Defendants contend that Patrick only alleged the *conclusion* that each of the individuals directly participated in the deprivation of his rights. However, Defendants ignore numerous specific allegations against the individual Defendants. Patrick alleged Catezone ordered him to answer Marback's and Taggart's questions during the interrogation. ¶20. Patrick described, in detail, Marback and Taggart's interrogation. ¶20-24, ¶29. He also alleged that d'Escoto terminated him based on his arrest and refusal to answer the questions posed by Marback and Taggart. ¶33. In doing so, Patrick alleged the individuals attempted to coerce him to relinquish his Constitutional rights. ¶50-51, ¶58-59. These allegations are more than mere conclusions as Defendants contend.

The other cases Defendants rely on are not on point. In Perez v. Lane, 794 F. Supp. 286, 289 (C.D. Ill. 1992), the plaintiff alleged "*no facts* regarding the participation of any of the defendants in denying Plaintiff a promotion." Further, Rush Presbyterian St. Luke's Medical Center v. Safeco Ins. Co., 722 F. Supp. 485 (N.D. Ill. 1989) did not even involve claims for individual liability under Section 1983.

Accordingly, Patrick has properly named the Defendants in their official and individual capacities.

**V.     Defendants' Motion for a More Definite Statement As to Plaintiff's Property Interest in Count III Should Be Denied.**

Defendants contend that Patrick only made a "passing reference" to a certain property interest in Paragraph 47 of the Amended Complaint and therefore they are entitled to a more definite statement. Again, Defendants ignore the rest of the Amended Complaint. Patrick specifically cites the section of the City's Personnel Rules which provided that Patrick could only be discharged for "just cause." ¶15. He also states that his Collective Bargaining Agreement provided for same. Id. It has long been held that public employees who cannot be dismissed except for cause have a property interest in their positions. Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1263 (7th Cir. 1985). Moreover, specific contents of a collective bargaining agreement need not be alleged at this stage. Cranston v. Baltimore & O. R. Co., 16 F.R.D. 318, 319 (W.D. Pa. 1954). Accordingly, Patrick has sufficiently pled a property interest in his employment.

WHEREFORE, Plaintiff requests that this Court deny Defendants' Motion to Dismiss, in Part, the Plaintiff's Amended Complaint, and for a More Definite Statement.

Respectfully submitted:


/s/ Annemarie E. Kill
Annemarie E. Kill (#6229587)
AVERY CAMERLINGO KILL, LLC
Attorney for Plaintiff
218 N. Jefferson St., Suite 200
Chicago, IL 60661
312-648-9707
akill@averycamerlingokill.com


Dated: January 2, 2007

15

**CERTIFICATE OF SERVICE**

I hereby certify that on **January 2, 2007**, I electronically filed the foregoing **Memorandum of Law in Opposition to Motion to Dismiss, in Part, Plaintiff's Amended Complaint and for a More Definite Statement,** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following:

George Ronald Thomson
City of Chicago Law Department
Corporation Counsel
30 N. LaSalle St., Suite 1020
Chicago, IL  60602
gthomson@cityofchicago.org

Jay Michael Kertez
City of Chicago Law Department
Corporation Counsel
30 N. LaSalle St., Suite 1020
Chicago, IL  60602
jkertez@cityofchicago.org

Joseph Francis Graham
City of Chicago Law Department
Corporation Counsel
30 N. LaSalle St., Suite 1020
Chicago, IL  60602
jgraham@cityofchicago.org

/s/ Annemarie E. Kill
Annemarie E. Kill (#6229587)
Avery Camerlingo Kill, LLC
Attorney for Plaintiff
218 N. Jefferson St., Suite 200
Chicago, IL 60661
312-648-9707
akill@averycamerlingokill.com

Dated: January 2, 2007